# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| DAVID M. HOOD,  individually, ) | |
| Plaintiff, ) | Civil Action No. 3:22-cv-30108 |
| *and* ) | |
| ) | |
| LORI A. ROBERT,  individually, ) | |
| Plaintiff, ) | |
| *and* ) | |
| ) | |
| MARK A. RODENHIZER, individually, ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| BOB'S DISCOUNT FURNITURE, LLC, ) | |
| Defendant, ) | |
| *and* ) | |
| ) | |
| JOHN DOE, un-named Manufacturer, ) | |
| Defendant, ) | |
| *and* ) | |
| ) | |
| JANE DOE, un-named Distributor, ) | |
| Defendant, ) | |
| *and* ) | |
| ) | |
| JOHN DOE II, un-named Supplier, ) | |
| Defendant. ) | |
| ) | |
| _____) | |

## COMPLAINT
## & JURY  DEMAND

## I.   FACTUAL NATURE OF THE ACTION, JURISDICTION &  VENUE

The Plaintiffs, David M. Hood, Lori A. Robert and Mark A. Rodenhizer

(hereafter "plaintiffs") allege the following against the Defendants:

1.     The plaintiffs as individuals bring this action against the defendants and any of their predecessors, merged entities, parent companies, subsidiaries, successors, partners, limited partners, LLC managers, corporate officers, directors, CEO's and their respective management, namely:

> a.) BOB'S DISCOUNT FURNITURE, LLC.; (hereafter also referred to as "defendant" or "Bob's Discount Furniture" or "BDF");
>
> b.) also against un-named JOHN DOE Manufacturer; (hereafter also referred to as "defendant" or "defendant manufacturer");
>
> c.) also against un-named JANE DOE Distributor; hereafter also referred to as "defendant" or "defendant distributor");
>
> d.) and against un-named JOHN DOE II Supplier, hereafter also referred to as "defendant" or "defendant supplier");
>
> (collectively also referred to herein as the "defendants").

2.     More specifically, plaintiffs bring the several claims as described below, *including but not limited to* Products Liability claims of Defective Product, Breach of Warranty, Defective Design, Breach of Implied Warranty, Failure to Warn, Misrepresentation, Negligence, Breach of Contract, and related claims or causes of action involving a **Bob's Discount Furniture, LLC recliner or a so-called "Lift Chair".**

The chair is more specifically identified as:  a **"Leather Tobacco Power Lift Recliner"**, **Article #864719, Web Order #8845121, and Order Number 100452871, and**

**Transaction ID# 253052165124, as purchased by Plaintiff Lori A. Robert on September 10, 2017 at 6:06:33 P.M. EDT**, **and delivered by BDF's "BOBtastic Whiteglove" delivery service on or about September 14, 2017**  (hereafter also referred to as "BDF recliner" or "Lift Chair" or  "BDF Power Lift Chair").

3.     This action seeks judgment and damages against the defendants under the provisions of  15 U.S.C.A. §2310, the Magnuson-Moss Warranty Act. This court has subject matter jurisdiction pursuant to 15 U.S.C.A. § 2310(d)(1)(B) as this action involves claims under the Magnuson-Moss Warranty Act, 15 U.S.C.A. §§ 23101 et seq.

4.     This action also seeks judgment and damages against the defendants under the provisions of  U.C.C. §§ 2-314 and 2-315.

5.     The Massachusetts statutory versions of U.C.C.  §§  2-314 and 2-315 are incorporated by reference the same as if set forth fully here.

6.     Federal Question Jurisdiction of this Court is established pursuant to 15 U.S.C.A. § 2310(d)(1)(B).

7.     This Court's supplemental jurisdiction under 28 U.S.C. § 1367, is authorized over state law claims arising under Massachusetts law.

8.     The wrongful acts, negligence, violations of federal and state law and related claims are alleged to have been principally committed (or continue to be committed) in the West Springfield, Hampden County, MA area.  Consequently venue in this judicial district is proper pursuant to 28 U.S.C.A.§1391.

9.     The plaintiffs further allege that the defendants have engaged in other wrongful, tortious and illegal acts and practices against them as described further in this complaint.

## II.    BACKGROUND FACTS ABOUT THE  PARTIES

### A.  The Parties Plaintiff:

10.    Paragraphs 1 – 9 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

11.    Plaintiff **David M. Hood** ("Hood") is an individual who is a citizen of the United States of America and of the Commonwealth of Massachusetts, and who resides in West Springfield, Hampden County, Massachusetts.   Mr. Hood has a mailing address of P.O. Box 1315, West Springfield, MA 01089. At all times relevant to this complaint, Mr. Hood was an end-point consumer and user of the dangerously defective Lift Chair.  Mr. Hood is also brother to plaintiffs Lori A. Robert and Mark A. Rodenhizer.  Mr. Hood is also the step-son of decedent Neil H. Rodenhizer.  David M. Hood is also a person with disabilities whose pre-existing conditions were worsened or exacerbated by the injuries he sustained in the fire that destroyed his family home.  Mr. Hood also suffered from new and distinct injuries during the fire including severe burns and toxic smoke inhalation. Upon information and belief, Mr. David M. Hood had an interest in the family residential property destroyed in the fire; this based upon a potential inheritance interest or other legacy.  Mr. Hood also lost most if not all of his personal belongings and property in this fire.

12.    Plaintiff **Lori A. Robert** ("Robert") is an individual who is a citizen of the United States of America and of the Commonwealth of Massachusetts, who resides in Hopkinton, Massachusetts.  At all times relevant to this complaint, Ms. Robert was also the consumer purchaser of the dangerously defective Lift Chair.  Ms. Robert is also sister to plaintiffs

David M. Hood and Mark A. Rodenhizer.  Ms. Robert is also the daughter of decedent Neil H. Rodenhizer. Upon information and belief, Ms. Lori A. Robert had an interest in the family residential property destroyed in the fire; this based upon a potential inheritance interest or other legacy.

13.     Plaintiff **Mark A. Rodenhizer** is an individual who is a citizen of the United States of America and of the state of Florida, who resides in Defuniak Springs, Florida 32433.

Mr. Rodenhizer is also brother to plaintiffs David M. Hood and Lori A. Robert. Mr. Rodenhizer is also the son of decedent Neil H. Rodenhizer.  Upon information and belief, Mr. Mark A. Rodenhizer had an interest in the family residential property destroyed in the fire; this based upon a potential inheritance interest or other legacy.

### B.  The Parties Defendant:

<u>BOB'S DISCOUNT FURNITURE, LLC</u>:

14.     Defendant **BOB'S DISCOUNT FURNITURE, LLC** ("BDF") is a domestic Limited Liability Company (LLC) with a Massachusetts Secretary of State Corporations Division Identification Number of   202149352.  At all times relevant to the facts and allegations of this complaint, BDF was the manufacturer, distributor, supplier, warrantor or retailer of the dangerously defective Lift Chair.

15.     The location of the Bob's Discount Furniture, LLC principal office is:

434 Tolland Turnpike, Manchester, CT  06042, USA.  It's location or address where records are maintained in Massachusetts is:   200 Clarendon Street, Boston, MA 02116.

16.     The Resident Agent for Service of Process for Bob's Discount Furniture, LLC is:

C T CORPORATION SYSTEM, 155 Federal Street, Ste. 700, Boston, MA 02110.

17.    Bob's Discount Furniture, LLC has as Manager:  BDF ACQUISITION CORP.,
with an address of  200 Clarendon Street, Boston, MA 02116.


## JOHN DOE, MANUFACTURER

### (un-named or not yet identified)

18.    At all times relevant to the facts and allegations of this complaint, defendant
**JOHN DOE, MAUFACTURER,** who is not yet identified and remains un-named was
the manufacturer, distributor, supplier, warrantor  or retailer of the dangerously defective
Lift Chair.


## JANE DOE, DISTRIBUTOR

### (un-named or not yet identified)

19.    At all times relevant to the facts and allegations of this complaint, defendant
**JANE DOE, DISTRIBUTOR**, who is not yet identified and remains un-named was the
manufacturer, distributor, supplier, warrantor or retailer of the dangerously defective Lift
Chair.

## JOHN DOE II, SUPPLIER

### (un-named or not yet identified)

20.    At all times relevant to the facts and allegations of this complaint, defendant
**JOHN DOE II, SUPPLIER**, who is not yet identified and remains un-named was the
manufacturer, distributor, supplier, warrantor  or retailer of the dangerously defective Lift
Chair.

### III.    FACTS ALLEGED IN SUPPORT OF THIS COMPLAINT:

21.    Paragraphs 1 – 20 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

22.    On or about September 10, 2017 plaintiff Lori A. Robert purchased a  BDF Power Lift Chair from defendant Bob's Discount Furniture at 135 Memorial Avenue, West Springfield, MA 01089.

23.    On the sales receipt / contract for sale, the Lift Chair was described as a "Leather Tobacco Power Lift Recliner", and upon information and belief, included BDF's "BOBOPEDIC Memory Foam".

24.    The Lift Chair was further identified on the BDF sales related documents as being Article #864719, Web Order #8845121, and Order Number 100452871, and sold under Transaction ID# 253052165124, all as purchased by Plaintiff Lori A. Robert on September 10, 2017 at 6:06:33 P.M. EDT.

25.    According to the BDF Lift Chair sales receipt materials, the Lift Chair cost $599.00, with BDF Delivery Charges of $69.99 and sales tax in the amount of $37.44  for a grand total of $706.43.

26.    Later, on September 14, 2017, by BDF's "BOBtastic Whiteglove" delivery service delivered the Lift Chair to the home of Plaintiff David M. Hood and his father, Neil H. Rodenhizer located at 279 Morton Street, West Springfield, MA 01089.

27.    Plaintiffs believe, based upon their observations of how the Lift Chair worked, that it was equipped with a back-up or alternative battery power source, likely a lithium-ion battery system.  This is based upon observing that the Lift Chair was still operational when

the electricity to the home was off due to a general or local power outage. Further, the plaintiffs state the following regarding the BDF Lift Chair:

a.)  The Lift Chair had as a component a certain alternative power supply manufactured, designed, constructed, assembled, outfitted and supplied by the Defendants which upon information and belief, caused or contributed to the eruption of the fire.

b.)  Defendants, as manufacturers, sellers, distributors, warrantors, suppliers or retailers agreed to and did design, build and manufacture, outfit, construct, and ultimately furnished the defective, dangerous  Lift Chair to Plaintiff(s).

c.)  More specifically, the Lift Chair delivered by the defendant(s) was:

i.] Improperly designed, constructed, assembled, manufactured, and/or outfitted so as to render the Lift Chair unfit for its ordinary purposes.

ii.] Improperly designed, constructed, assembled manufactured and/or outfitted so as to render the Lift Chair unfit for its intended purpose as a powered lift chair to be used by persons with mobility issues, related disabilities and health conditions normally anticipated for the use of such Lift Chairs, this as a result of negligence and lack of workman-like performance.

iii.] Inadequately designed and manufactured and not free from defects to insure the Lift Chair would not catch fire.

iv.]  Without warnings, instructions or other notifications to Plaintiff of the dangers inherent and foreseeable in the operation of the Lift Chair.

v.] Improperly designed, manufactured and constructed so as to allow mechanical and / or electrical components integral to and part of the Lift Chair that were located near the frame and other moveable parts or mechanisms, to overheat and catch fire.

vi.] Not designed, manufactured and constructed with appropriate fire retardant materials;

vii.] Not designed, manufacturered and constructed with appropriate protections or shielding or sealants or clearance against moisture entering the electrical, battery compartment, electrical motor, related wiring, wiring harnesses and entry and exit points for wiring and connecting hardware of the Lift Chair; thus the Lift Chair was negligently made and was inherently dangerous and defective.

viii.] Not designed, manufactured and constructed with appropriate protections or shielding or sealants or clearance to prevent wiring and connections from becoming entangled, cut, electrically shorted, electrically overloaded, electrically overheated, mechanically overheated, broken, stressed, constricted, or unbalanced electrically so as to cause overheating and fire in the Lift Chair.

ix.] Designed, manufactured and constructed without reasonable care and with omissions that may be uncovered as discovery and investigation continues;

x.] Defectively, carelessly, improperly and negligently designed including

but not limited to the design decision to use or implement lithium-ion battery(ies) as an alternative source of power for the Lift Chair, given the common knowledge that such batteries can over-heat and catch on fire with disasterous results; this when a reasonable alternative design was possible and available.

xi.] The direct and proximate cause of the fire was defendant's breach of contract, and its breaches of Implied Warranties of Merchantability and Fitness for its Intended Purpose, and for failure to deliver a Lift Chair that was properly designed, manufactured, and constructed.

xii.] The defects described were present and existing in the Lift Chair and its components at the time it was manufactured and also when it was made, supplied, sold or distributed by the manufacturer and other defendants.

xiii.] There were NO modifications, alterations, additions or changes made to the BDF Lift Chair by the plaintiffs or any other person after it was delivered to the Rodenhizer / Hood home in West Springfield, MA.

28.    The plaintiff David M. Hood and his deceased father Neil H. Rodenhizer used the Lift Chair up to just approximately less than twelve (12+/-) hours before there was a fire which started in the Lift Chair, this while both Mr. Hood and his elderly father Mr. Rodenhizer were asleep.  The fire resulted in significant or total losses to their family home at 279 Morton Street, West Springfield, MA. and also personal injuries to Plaintiff David M. Hood, his deceased father Neil H. Rodenhizer and to the other plaintiffs as stated further herein below.  Injuries to at least two (2) firefighters also occurred during their attempts to

control, contain and extinguish the blazing inferno.

29.     According to a Town of West Springfield, MA Fire Department Incident Report # 2019-4685 dated 08/21/2019, the home had pre-incident values of $210,000.00 for the home itself and $50,000.00 for the personalty or contents of the house, for a total value before the Lift Chair fire of $260,000.00.

30.     Based upon this same report, the total losses to the home's value due to damage to the structure was $160,000.00. As to the contents destroyed in the fire, that was valued as a total loss of $50,000.00; this for a total property loss of $210,000.00.

31.     Mr. Neil H. Rodenhizer was transported by ambulance to a local hospital for treatment of possible burns and for actual toxic smoke inhalation; this for what was initially observed at the fire scene to be mostly internal injuries according to the same Incident Report # 2019-4685 dated 08/21/2019.

32.     Mr. David M. Hood was also transported to a local hospital for treatment of serious burns and injuries to his arms, legs and other body parts and for actual toxic smoke inhalation, again as initially observed and reported according to the same Incident Report # 2019-4685 dated 08/21/2019.

33.     The Rodenhizer / Hood home at 279 Morton Street, West Springfield, MA was soon after deemed to be **Condemned and Unfit for Human Habitation** by the West Springfield, MA Health Board or Inspector and by other authorities due to the damages caused by the BDF Lift Chair fire.

34.     Upon information and belief, the toxic smoke which David Hood and Neil Rodenhizer inhaled at the fire scene had combustion by products from the Lift Chair including but not limited to fabric, vinyl, leather or faux leather, upholstery, padding, so-

called BOBOPEDIC Memory Foam, electrical wiring and plastics, wood or wood based materials, adhesives, sealants, possible hydraulic fluids and lithium-ion battery chemicals and other components.

35.    Plaintiff David Hood was the first to become aware of the house fire in the family/ living room area.  As he entered the area he saw that the Lift Chair was burning and in flames. He observed flames rising about three (3) feet from the ground.

36.    Mr. Hood immediately reacted by trying to move the BDF Lift Chair out of the house through a front door; this door being in close proximity to the Lift Chair location in the living room / family room area.

37.    David Hood was unable to remove the chair through the doorway.

38.    David Hood sustained severe burns to his arms and legs and also suffered from smoke inhalation.  The burns he sustained were from his trying to remove what he saw as the fire source from the home, namely the BDF Lift Chair.

39.    At about the same time, his step-father, Neil Rodenhizer was in his bedroom with the door closed and asleep.

40.    Mr. Rodenhizer reported to authorities that he began to cough and did not know why.

41.    Neil Rodenhizer reported he heard sirens coming down the street.

42.    Shortly after, Mr. Rodenhizer was rescued by firefighters and police officers who affected the rescue (of this disabled elderly man) by breaking the bedroom window, entering the bedroom and carrying him out to safety by passing him through the window to men waiting to pull him outside and away from the burning, smoke filled house.

43.    Both Mr. David Hood and Mr. Neil Rodenhizer were transported to emergency health care facilities where they were treated for burns (Mr. Hood had burns and it was suspected that *possibly* Mr. Rodenhizer also had burns), and both Hood and Rodenhizer were treated for toxic smoke inhalation.

44.    Both Mr. Hood and his step-father Mr. Rodenhizer were later admitted to a nursing home facility where they were cared for while recovering from their fire injuries.

45.    The elder Mr. Rodenhizer never returned to his home, as it was unfit for human habitation due to the extensive fire and water damage to the structure.

46.    Plaintiff Mark Rodenhizer was prevented from visiting his father Neil H. Rodenhizer because his father was in the nursing home, not in his family residence because of the fire, and also due to Covid-19 restrictions, visits were severely limited.

47.    Plaintiff Mark Rodenhizer says that but for the house fire caused by the BDF Lift Chair, his father Neil Rodenhizer would have still been living in the home and likely would have lived longer, but due to the injuries the elder Mr. Rodenhizer suffered in the fire, his life was also shortened.

48.    Mark Rodenhizer never got to see his father before he passed away, he believes largely due to the consequences and effects of the devastating house fire his father endured. Mark Rodenhizer lost not only his father, but his father's company, guidance, advice, care and provision.

49.    Mark Rodenhizer's brother David Hood and Sister Lori Robert also suffered the loss of their father, Neil H. Rodenhizer's company, guidance, advice, care and provision, along with losing him earlier than he likely would have died, because of the effects of the toxic smoke inhalation in the BDF Lift Chair fire.

50.     Plaintiff David M. Hood has significant scarring from the burns he endured as a result of the fire caused by the BDF Lift Chair.

51.     Plaintiff David M. Hood also has asthma, a condition that he did not have before he suffered from toxic smoke inhalation as caused by the BDF Lift Chair fire.

52.     Plaintiff David M. Hood had significant medical expenses, pain and suffering as a result of the injuries he received as caused by the BDF Lift Chair fire.

53.     Plaintiff David M. Hood will have significant and continuing medical expenses into the future due to the exacerbated pre-existing conditions he had, including difficulties with mobility and speech (both pre-existing disabilities) as well as the new condition of asthma. The mobility and speech conditions were made worse by the toxic smoke inhalation and burns.

54.     Plaintiff David M. Hood also suffered from emotional distress and continues to have emotional difficulties and stress resulting from and related to the devastating fire caused by the BDF Lift Chair.

55.     Plaintiff Lori A. Robert also suffers from emotional distress as a continuing result of the fire caused by the BDF Lift Chair.

56.     Plaintiff Mark A. Rodenhizer also suffers from emotional distress as a continuing result of the fire caused by the BDF Lift Chair.

57.     The Rodenhizer / Hood family residence was considered a total loss as a result of the fire caused by the BDF Lift Chair.

58.     David M. Hood was unable to return to the family home after the fire because the residential building was so significantly damages by the fire and water used to extinguish the fire, that it was determined to be uninhabitable for humans.

59.    The Defendant(s) have manufactured, supplied, distributed and sold the BDF Lift Chair(s) nationwide.

60.    The Defendant(s) have also sold the BDF Lift Chair(s) in more than one hundred (100) Bob's Discount Furniture retail locations or stores and through so-called "on-line" stores or internet stores, nationwide.

## IV.    COUNTS BROUGHT AGAINST THE DEFENDANTS:

## COUNT ONE

(In three related alternative parts, A., B., and C. Below.)

**MAGNUSON-MOSS WARRANTY ACT VIOLATIONS (against manufacturer, supplier, distributor and seller) and related POTENTIAL Class-wide allegations.**

61.    Paragraphs 1 – 60 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

### A. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

62.    At all times material hereto, the BDF Lift Chair, when manufactured and sold by defendants was in a defective condition and was unreasonably dangerous to the user and consumer.

63.    At all times material hereto, the BDF Lift Chair, was not of merchantable quality and were unfit, unsafe, and unusable for the ordinary purpose for which it was intended.

64.    At all times material hereto, defendants manufacturer, distributor, supplier and seller   breached the implied warranty of merchantability and usage of trade by failing to

properly design, inspect, test, construct, manufacture and equip the BDF Lift Chair and by delivering a Lift Chair that was unfit for ordinary use.

65.    The cause and origin of the fire was the result of defendants' breach of an implied warranty of merchantability.

66.    At all times material each defendant was a "supplier" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C.A. § 2301(4).

67.    At all times material each defendant was a "warrantor" within the meaning of the Magnuson-Moss Warranty Act 15 U.S.C.A. § 2301(5).

68.    At all times material, Plaintiffs were "consumer(s)" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C.A. § 2301(3).

69.    At all times material, the BDF Lift Chair was a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C.A. § 2301(1).

70.    At all times material, the BDF Lift Chair's component parts, including but not limited to its wiring, electrical motor, lithium-ion battery and related elements, mechanical components, frame and all other individual parts thereof as combined to make the BDF Lift Chair were "consumer product(s)" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C.A. § 2301(1).

71.    Defendants distributed into commerce as suppliers and warrantors the the BDF Lift Chair and similar Lift Chairs for sale to consumers in general and to Plaintiff(s) in particular.

72.    Defendants violated the Magnuson-Moss Warranty Act by failing to provide

plaintiff with a warranty (full or limited) before purchasing of the BDF Lift Chair

73.     Defendants violated the Magnuson-Moss Warranty Act by failing to designate their alleged warranty as either full or limited.

74.     Defendants violated the Magnuson-Moss Warranty Act by failing to present their alleged the BDF Lift Chair warranty information in a single, clear and easy-to-read document.

75.     Defendants violated the Magnuson-Moss Warranty Act by improperly disclaiming and / or modifying implied warranties.

76.     Defendants violated the Magnuson-Moss Warranty Act by failing to use a safe alternative to the lithium-ion power supply, by defectively designing and combining the lithium-ion back-up or alternative power source in combination with related electrical, hydraulic, mechanical and structural parts of  the BDF Lift Chair, and failing to provide plaintiff Lori A. Robert with a refund for the BDF Lift Chair knowing that it contained defects that could not be repaired.

77.     Plaintiff(s) have complied with all conditions precedent under the Magnuson-Moss Warranty Act as required by that law as applied to this case.

78.     As a direct and proximate result of defendants' various violations of the Magnuson-Moss Warranty Act, plaintiffs have suffered injuries and damages in an amount in excess of $5,000,000.00 plus costs of this action, related expert witness fees and attorney's fees.

## B.  BREACH OF MAGNUSON-MOSS WARRANTY ACT

**and RECOVERABLE DAMAGES BY POTENTIAL CLASS MEMBERS.**

79.     Paragraphs 1 – 78 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

80.     Plaintiffs bring this claim individually and on behalf of the POTENTIAL Class.

81.     The BDF Lift Chair(s) are "consumer products" within the meaning of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C.A. § 2301(1).

82.     Plaintiffs and POTENTIAL Class members are "consumers" within the meaning of the MMWA, 15 U.S.C.A. § 2301(1).

83.     Defendant(s) are "supplier(s)" and "warrantor(s)" within the meaning of the MMWA, 15 U.S.C.A. § 2301(4) to (5).

84.     Defendant provided Plaintiffs and POTENTIAL Class members with "implied warranties" within the meaning of the MMWA, 15 U.S.C.A. § 2301(7).

85.     Pursuant to agreements for resale of the BDF Lift Chairs between Defendant and nationwide retailers including, but not limited to, BDF, Plaintiffs and POTENTIAL Class members are third-party beneficiaries of such contracts.

86.     Defendant(s) warranted to Plaintiffs and POTENTIAL Class members that the BDF Lift Chairs were free from defects, were of merchantable quality and fit for the ordinary purpose for which the Lift Chairs are used.

87.     Defendant(s) have breached their warranties. Defendant(s) breached their warranties as to the BDF Lift Chairs, in that the BDF Lift Chairs suffer from known defects that causes them to overheat, spark, catch fire, and / or project hot combusting materials and chemicals, including lithium-ion battery combustion materials and by-products during normal and intended use.

88.     The amount in controversy of Plaintiffs and POTENTIAL Class members' individual claims meets or exceeds the sum or value of $50,000,000.00.   In addition, the amount in controversy meets or exceeds the sum of the current jurisdictional amount as required for class actions to proceed; this computed on the basis of all claims to be determined by this suit (exclusive of interest and costs).

89.     In their capacities as a warrantor(s), and by the conduct described here, any attempt by the Defendant(s) to limit the implied warranty of merchantability in a manner that would exclude coverage for the defects in the BDF Lift Chairs is unconscionable and any such effort to disclaim, or otherwise limit liability for its defective BDF Lift Chairs is null and void.

90.     By Defendants' conduct described above, including Defendants' knowledge of the defects in the BDF Lift Chairs and their inaction in the face of that knowledge; Defendant(s) have failed to comply with their obligations under theirs implied warranties.

91.     Defendant(s) have been afforded reasonable opportunity to cure their breaches of warranty.  Plaintiffs, on behalf of themselves and the POTENTIAL Class say that it is common knowledge that lithium-ion batteries are prone to failing, shorting out, over-

heating, catching fire, and causing  destruction of property, personal injuries and even death.  Plaintiffs, on behalf of themselves and the POTENTIAL Class further say that not only have many lithium-ion power sources caused fires, destruction and injury or death as a result of their inherently defective and dangerous design and because of the materials, chemical and elements used in their manufacture; but many have been the subject of consumer complaints and recalls by the federal government.    Plaintiffs, on behalf of themselves and the POTENTIAL Class further allege that in addition, Defendant(s) have received reasonable notice of the breach through negative consumer complaints and comments on various Web sites, including complaints made to the Consumer Product Safety Commission, and directly to Defendant(s). Defendant(s) failed to remedy the situation on a POTENTIAL class-wide basis.

92.     As a direct and proximate result of Defendants' conduct, Plaintiffs and the POTENTIAL Class members have suffered injuries and damages in an amount to be determined at trial. Plaintiffs and the POTENTIAL Class members are entitled to recover damages, consequential damages, special damages, equitable relief, attorney fees and litigation costs pursuant to 15 U.S.C.A. § 2310.

93.     WHEREFORE, plaintiffs demands judgment for their damages, together with interest, costs, expert witness fees and related reasonable costs of litigation along with their attorney's fees against defendants and for such other and further relief as this court deems just and proper.

## C.  ALTERNATIVE RECOVERY FOR DAMAGES AND OTHER RELIEF FOR  BREACH OF  IMPLIED WARRANTY BY POTENTIAL CLASS.

94.    Paragraphs 1 – 93 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

95.    Plaintiffs bring this claim individually and on behalf of the POTENTIAL Class.

96.    Plaintiffs purchased the BDF Lift Chair from Defendant's authorized retailer(s) in the United States including but not limited to Massachusetts. Such purchases by POTENTIAL Class members were also, upon information and belief, nationwide.

97.    Pursuant to agreements for resale of the BDF Lift Chairs between Defendant(s) and nationwide retailers including, but not limited to, BDF, Plaintiffs and the POTENTIAL Class members are third-party beneficiaries of such contracts.

98.    At the time of sale, and currently, Defendant(s) are in the business of manufacturing, distributing and selling BDF Lift Chairs.

99.    Defendant(s) impliedly warranted that their BDF Lift Chairs were of good and merchantable quality, fit and safe for their ordinary intended use.

100.    Defendant(s) knowingly and / or recklessly sold a defective product without conspicuously informing consumers about the design and / or manufacturing defects in the BDF Lift Chairs manufactured, distributed and / or sold by Defendant(s) to retailers throughout the United States. Defendant(s) possessed actual, superior knowledge of the BDF Lift Chairs' propensity to spark, catch fire and / or shoot flames or hot burning combustion; this based on consumer complaints filed through the Consumer Product

Safety Commission, Defendant's customer service representatives and internal investigations.

101.    Defendant(s)' attempted waiver and / or limits on implied warranties are unconscionable and unenforceable since Plaintiffs and the POTENTIAL Class had no meaningful choice in determining those time limitations, the warranties are written by Defendant(s) without input from consumers.  Further, a gross disparity in bargaining power exists as between Defendant(s) and POTENTIAL members of the Class, and Plaintiffs and POTENTIAL Class members had no way of knowing the unilateral limitations placed on the implied warranty by Defendant until they had already purchased and used the product. Defendant(s) knew or should have known that the BDF Lift Chairs were defective at the time of sale and have a propensity to fail before the warranty period lapses, and Plaintiffs and POTENTIAL Class members were unfairly surprised by the concealment of the material facts of the defects causing their BDF Lift Chair(s) to spark, catch fire,  and / or shoot flames or hot burning combustion.

102.    Plaintiffs and POTENTIAL Class members' BDF Lift Chair(s) became unfit for their ordinary purpose of safely operating without catching fire within the implied warranty period and posed a safety concern to consumers.

103.    The inherent design / manufacturing defects in the BDF Lift Chair(s) existed when the BDF Lift Chair(s) left Defendant(s)' and their authorized resellers' possession and renders the BDF Lift Chair(s) unfit for their intended use and purpose.

104.    As a direct and proximate result of Defendant(s)' breaches of their implied

warranties, Plaintiffs and POTENTIAL members of the Class have sustained damages and other losses in an amount to be determined at trial. Plaintiffs and Class members are entitled to recover legal and equitable relief against Defendant(s), including damages, attorney fees, litigation costs, expert witness fees and related costs, and other relief provided by law and that the Court deems proper.

105.    WHEREFORE, plaintiffs demands judgment for their damages, together with interest, costs, expert witness fees and related reasonable costs of litigation along with their attorney's fees against defendants and for such other and further relief as this court deems just and proper.

## COUNT TWO

**BREACH OF MASSACHUSETTS U.C.C. EXPRESS and IMPLIED WARRANTY PROVISIONS BY (MANUFACTURER, SUPPLIER, WARRANTOR, DISTRIBUTOR, COMPONENT MANUFACTURER and SELLER)**

106.    Paragraphs 1 – 105 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

107.    At all times material hereto, defendants, manufacturer(s), seller(s), warrantor(s), supplier(s) and retailer(s) were manufacturers and / or sellers of Lift Chairs and of the Lift Chair which is the subject of this lawsuit. The defendnats did supply, distribute or sell the dangerously defective Lift Chair to members of the public, including Plaintiff Lori A. Robert.

108.    Defendant(s), as manufacturer(s), seller(s), warrantor(s), supplier(s) and retailer(s) agreed to and did design, manufacture, outfit, construct, furnish, equip and sell the BDF Lift Chair in exchange for an ultimate payment to BDF of more than $700.00.

109.    To induce Plaintiff to purchase the BDF Lift Chair, including the alternative lithium-ion power supply; defendants made representations and / or promises before, during and after delivery of the Lift Chair regarding the quality of the Lift Chair and its features. Defendants' representations constituted ***express warranties*** by affirmation, promise, description, or sample.

110.    Defendants' express warranties were made to plaintiff orally, in writing, by contract, statement, bill of sale, purchase order, sample, container model, description advertisement, brochure, manual, label and by other methods to be revealed through the course of discovery and warranted a minimum level of quality and future performance of the Lift Chair, including all of its component parts and including the lithium-ion battery system and other electrical and mechanical components of the Lift Chair.

111.    Defendants also made other representations and warranties to Plaintiff regarding the materials and workmanship in the design, manufacturing, quality, durability, value and of the lithium-ion battery alternative power source and other electrical and mechanical components used to make the Lift Chair.

112.    At all times material hereto, Plaintiff(s) reasonably relied on defendants' skill, expertise, representations, and judgment in the design, manufacture, alleged or stated quality, durability and equipping with certain features of the Lift Chair including the lithium-ion battery alternative power source and other electrical and mechanical components of the Lift Chair.

113.    At all times material hereto, the above affirmations, representations of fact and promises  by the defendants became part of the basis of the bargain between the parties.

114.    On or about Friday, August 16, 2019, a fire erupted starting in the DBF Lift Chair.

115.    The fire caused by the Lift Chair resulted in substantial damage to the Rodenhizer / Hood family home, substantial personal injuries to Mr. Neil Rodenizer and Mr. David Hood, including severe toxic smoke inhalation and burns to multiple body parts. The home was for all intents and purposes, a total loss, except for the value of the land, subject to the additional costs of demolition and removal of the now condemned and uninhabitable home.

116.    Significant losses of personalty also resulted from the BDF Lift Chair fire.

117.    The fire was caused by defendants' failure to sell the Lift Chair including all of its components in conformity with the express warranties, promises and representations made by the defendants to the Plaintiff(s).

118.    The Breaches of Express Warranty as set forth above warranty resulted in the fire starting in the dangerously defective Lift Chair, its full destruction and destruction of the Rodenhizer / Hood family residence, rendering same to be essentially, a total loss.

119.    As a direct and proximate result of the defendants' breach of their express warranties and representations, plaintiffs have suffered significant calculable actual damages, losses to property both real and personal, past, present and future severe personal injuries, past, current and future medical bills, and incurred expenditures in an amount exceeding $5,000,000.00.

## COUNT THREE

**BREACH OF WARRANTY
UNDER MASSACHUSETTS U.C.C. §§ 2-314 *and* 2-315
AGAINST ALL DEFENDANTS**

120.    Paragraphs 1 – 119 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

121.    Plaintiffs brings this claim against all Defendants pursuant to Massachusetts Uniform Commercial Code provisions, specifically  U.C.C. §§ 2-314 and 2-315.

122.    Pursuant to the Massachusetts version of U.C.C. § 2-314, Defendants impliedly warranted that the BDF Lift Chair was merchantable as a consumer home furnishing item for use by persons with mobility or disabling conditions.

123.    Pursuant to the Massachusetts version of  U.C.C. § 2-315, Defendants impliedly warranted that the BDF Lift Chair was fit for the particular purposes that Defendants advertised and represented to Plaintiff(s) through their flyers, advertisements in multi-media including print, broadcast, internet and direct contact sales materials, by the Plaintiff(s) as consumers.

124.    Under the Massachusetts U.C.C. Warranty Act, every sale of consumer goods in the Commonwealth of Massachusetts is accompanied by both a manufacturer's and a retail seller's implied warranty that the goods are merchantable.

125.    Plaintiff(s) and members of the POTENTIAL Class each purchased one or more

of the BDF Lift Chairs from BDF retailers or other retailers located in the Commonwealth of Massachusetts and also nationwide, either through Defendant directly or via its Web sites. BDF Lift Chairs are "consumer goods" within the meaning of the Massachusetts U.C.C. Warranty statutes.

126.   Defendant(s) are in the business of manufacturing and selling BDF Lift Chairs  to retail buyers, and are therefore "manufacturer(s)" and "seller(s)" within the meaning of the Massachusetts U.C.C. Warranty statutes.

127.   Defendant impliedly warranted to Plaintiff(s) and members of the POTENTIAL Class that the BDF Lift Chairs were of merchantable quality, would pass without objection in the trade or industry, and were fit for the ordinary purposes for which the Lift Chairs are used.

128.   Plaintiff(s) and members of the POTENTIAL Class were only able to discover the serious, dangerously defective conditions of their BDF Lift Chairswhen the Lift Chairs malfunctioned, over-heated, failed or caught fire; as such defect(s) were hidden and not disclosed as they should have been by the Defendant(s).

129.   As described in detail above and below, Defendant(s) have breached the implied warranties because the BDF Lift Chair(s) sold to Plaintiff(s) and POTENTIAL members of the Class were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such goods are used, in that the BDF Lift Chairs  have the tendency to spark, catch fire,  and / or shoot flames or hot burning combustion thereby exposing Plaintiff(s) and POTENTIAL  members of the Class to

serious injury and dangerous conditions.

130.    Plaintiffs and POTENTIAL Class members were unfairly surprised by the concealment of the material facts of the defects causing their BDF Lift Chair(s) to spark, catch fire,  and / or shoot flames or hot burning combustion.

131.     The BDF Lift Chair(s) did not comply with the above implied warranties.

132.    Defendants failed to comply with their obligations under the above implied warranties.

133.    As a direct and proximate result of Defendant(s)' breach of the Warranty Act, Plaintiff(s) and POTENTIAL members of the Class sustained damages and other losses in an amount to be determined at trial. Defendant's conduct has caused Plaintiff(s) and members of the POTENTIAL Class as described above to incur compensatory damages, consequential damages, statutory damages, costs, expert witness fees, attorney fees and interest.

134.    Additionally, as a further direct and proximate result of Defendants' breaches of warranty, Plaintiffs  have been damaged, suffered losses and POTENTIAL Class members have or will potentially suffer severe personal injuries, up to and including death, as well as significant property damages and losses in the future unless the Defendants are required to remedy their wrongdoings against the Plaintiff(s) and POTENTIAL Class members.

135.     WHEREFORE, Plaintff(s) request judgment against Defendants in an amount to be determined at trial, plus costs and expenses, expert witness fees, attorney's fees and including pre and post judgment interest, and such additional amounts as the court deems appropriate.

## COUNT FOUR
### BREACH OF CONTRACT (SELLER BDF)

136.     Paragraphs 1 – 135 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

137.     Defendants failed to deliver the BDF Lift Chair in the condition represented by sellers and as required under the contract of sale because the BDF Lift Chair was defective and dangerous as delivered to the plaintiff(s).

138.     Defendant(s)' marketing materials, advertisements and promotions as well as all of their communications directed to potential consumers like the plaintiffs, were deceptive and failed to disclose essential defects in the BDF Lift Chair, rather representing the BDF Lift Chair to be of good to excellent quality, well made, and having met the so-called Bob's Discount Furniture claims of quality and fitness for use.

139.     As a direct and proximate result of defendants' breach of contract, plaintiffs suffered damages in an amount exceeding $5,000,000.00 related to the fire caused by the defective and dangerous BDF Lift Chair.

140.     WHEREFORE, plaintiffs demands judgment for their damages, together with interest, costs, expert witness fees and related reasonable costs of litigation along with their attorney's fees against defendants and for such other and further relief as this court

deems just and proper.

## COUNT FIVE

### STRICT PRODUCT LIABILITY

141.  Paragraphs 1 – 140 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

142.    Though the *Massachusetts Supreme Judicial Court (SJC)* has not yet adopted a "Strict Liability" theory of recovery for defective products; the Plaintiff(s) respectfully submit and plead here that due to the inherently defective and severely dangerous nature of the BDF Lift Chair and its component parts, including but not necessarily limited to its lithium-ion battery powered alternative power source and related mechanical or electrical components, and that such Strict Liability recovery theories are now required to protect the interests of innocent Plaintiffs such as the plaintiffs here, and POTENTIAL Class members.

143.    These significantly defective traits of the BDF Lift Chair have already caused and can also potentially cause very severe destructive and injurious losses, personal injuries and damages, up to and including death, (such as occurred in the Plaintiff(s) instant case), so that there now exists in the jurisdiction good cause and proper reason to now plead for a reasonable expansion, change or extension of  Products Liability liability recovery theories in Massachusetts to now include Strict Liability for Defective Products.

144.    Plaintiffs acknowledge that the SJC has not yet provided a Strict Liability liability

recovery cause of action because the Massachusetts high court believes that the
Massachusetts U.C.C. Warranty provisions are sufficient.

145.    Other state laws recognize an action for Product Defects that complements such
U.C.C. Provisions and that a "breach" occurs if a defect in a product, attributable to the
product's manufacturer, causes damage.

146.    Under Strict Liability, a product is defective if it is not reasonably fit for its
intended or foreseeable use or creates an unreasonably dangerous condition.

147.    Defendant(s) marketed, sold, designed and / or manufactured the BDF Lift Chair
as purchased by Plaintiff and other POTENTIAL Class Members.

148.    BDF Lift Chairs were defectively designed and / or manufactured in a manner
that caused the BDF Lift Chairs to spark, catch fire, and / or shoot flames or hot burning
combustion during normal and intended use.

149.    Based on the propensity of the BDF Lift Chair(s) to spark, catch fire, and / or
shoot flames or hot burning combustion, the DBF Lift Chair(s) were not reasonably fit
and / or safe at the time they left the control of the manufacturer.

150.    Practically and technically feasible alternative means of design / production were
and are available that would have prevented the harm without significantly impairing the
usefulness or desirability of the product to users and without creating an equal or greater
risk of harm.

151.    Alternative production was technically feasible because the technical and scientific knowledge, at the time the BDF Lift Chairs left Defendant(s)' control, was developed, available and capable of use by the manufacturer.

152.    Defendant(s) possessed actual knowledge that its product was defective and had a substantial likelihood of causing damages and injury, and it actively concealed these defects from consumers.

153.    Plaintiffs and other POTENTIAL Class Members used the BDF Lift Chairs for their intended purpose and did nothing to alter or misuse their Lift Chairs in any way.

154.    Plaintiffs and other POTENTIAL Class Members suffered damages or will suffer damages proximately caused by the defects and / or unreasonably dangerous condition of the BDF Lift Chairs.

155.    As a result of the product defects in the BDF Lift Chairs, Defendant(s) breached their duties to Plaintiffs and other POTENTIAL Class Members and is / are responsible for all of their damages.

156.    WHEREFORE, plaintiffs demands judgment for their damages, together with interest, costs, expert witness fees and related reasonable costs of litigation along with their attorney's fees against defendants and for such other and further relief as this court deems just and proper.

# COUNT SIX

**STRICT PRODUCTS LIABILITY—DEFECTIVE DESIGN OR MANUFACTURE**

157.    Paragraphs 1 – 156 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

158.    Plaintiffs bring this claim individually and on behalf of the POTENTIAL Class.

159.    Defendant(s) designed, created, manufactured and distributed the BDF Lift Chairs which are the subject of this lawsuit. Defendant(s) are "manufacturer(s)" as defined by, among other state statutes, Massachusetts Uniform Commercial Code provisions, specifically  U.C.C. §§ 2-314 and 2-315.

160.    Plaintiffs and POTENTIAL Class members purchased BDF Lift Chairs which were manufactured, distributed or sold by Defendant(s). Plaintiffs are therefore "purchasers" or "claimants" as defined by, among other state statutes, Massachusetts Uniform Commercial Code provisions, specifically  U.C.C. §§ 2-314 and 2-315.

161.    At the time the BDF Lift Chairs left the manufacturer and control of Defendant(s) and were sold, the BDF Lift Chairs were defective in design and / or manufacturing as defined and described above and as set forth in applicable Warranty Law.

162.    The BDF Lift Chairs were defective and inherently and unreasonably dangerous and unsafe for their intended use because they have a propensity to spark, catch fire, and / or shoot flames or hot burning combustion  during normal and intended use.

163.    The BDF Lift Chairs failed to perform as safely as an ordinary consumer would have expected them to perform.

164.    The negligible additional costs incurred to eliminate these defects is far outweighed by the harm in subjecting Plaintiffs and POTENTIAL Class members to serious bodily injury or death, and the defective product does not conform to the representations about it or perform its intended functions.

165.    As a result of the failure of the BDF Lift Chair(s) to conform to the Defendant's representations, and due to the unreasonably dangerous condition of the BDF Lift Chairs, Plaintiffs and POTENTIAL Class members have suffered damages including, but not limited to, "economic loss" and "harm" as defined by, relevant and applicable state statutes, and the common law, with the amounts to be determined at trial.

166.    Defendant(s) are and should be found to be **Strictly Liable** for the harm caused by the defects.

167.    The Defendant(s) are also strictly liable for additional compensatory and economic losses pursuant to applicable statutory law and the common law.

168.    WHEREFORE, the Plaintiffs and the POTENTIAL Class members are entitled to judgment for their damages, compensatory damages, punative damages, exemplary damages and for the costs of litigation, expert witness fees, attorney fees and any other or further relief the Court deems proper.

## COUNT SEVEN

### STRICT PRODUCTS LIABILITY—FAILURE TO WARN

169.    Paragraphs 1 – 168 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

170.    Plaintiffs bring this claim individually and on behalf of the POTENTIAL Class based on, among other state statutes, Statutory Inadequate Warning pursuant to Section 10 of the Restatement (Third) of Torts: Product Liability.  Under this rule,

> "where a seller knows or reasonably should have known of product dangers discovered post-sale, [it has] a duty to warn users of substantial risks of harm if a reasonable person in the seller's position would provide a warning and if 'those to whom the warning might be provided can be idenified,' and the warning 'effectively communicated' to them."

171.    Plaintiffs, and others similarly situated, purchased the BDF Lift Chair(s) which were manufactured, distributed or sold by Defendant.

172.    The potential for the BDF Lift Chairs to spark, catch fire,  and / or shoot flames or hot burning combustion during normal and intended use, or even as alleged by Plaintiffs here, to spontaneously catch fire while plugged or unplugged, used or sitting unused, undoubtedly presents a substantial danger to consumers.

173.    Plaintiffs and other ordinary consumers would not have recognized or known of these defects or the potential risks.

174.    Defendant(s) knew, or in the exercise of reasonable care should have known, that the BDF Lift Chairs were and currently are likely to spark, catch fire,  and / or shoot

flames or hot burning combustion all as stated above, subjecting consumers to risk of serious harm to their person and / or property.

175.    At the time Defendant(s) manufactured, distributed and / or sold the BDF Lift Chairs, they / it owed a nondelegable duty to Plaintiffs and to POTENTIAL Class Members to exercise ordinary and reasonable care to properly design and / or manufacture the BDF Lift Chairs, and they / it owe(s) a continuing duty to warn about the defects and to correct the defects and / or recall its defective BDF Lift Chairs.

176.    Defendant(s) had a pre-sale duty to warn potential purchasers that the BDF Lift Chairs carried with them the risks of sparking, catching fire,  and / or shooting flames or hot burning combustion during normal and intended use or reasonably-foreseeable use of the product, and that such could occur when an ordinary consumer was using the BDF Lift Chair.  This duty was because of the unreasonably dangerous and defective nature of their Lift Chair product.

177.    Defendant(s) nonetheless failed to provide a warning regarding the potential dangers of the BDF Lift Chairs.

178.    Defendant(s), as the manufacturer, should have provided, in the exercise of reasonable care, such a warning.

179.    The defects in the BDF Lift Chairs are serious in light of the fact that they were not apparent to consumers in their normal use and for their essential purpose. A Lift Chair that catches fire falls well below a reasonable consumer's expectations.

180.    Defendant(s) failed to provide to Plaintiffs and consumers adequate warnings of the ultimate dangers inherent in the BDF Lift Chairs. Such warnings should have been placed on the packaging, the Important Safety Information (as a part of any user guide) included with each BDF Lift Chair, at the point of sale and / or on their Web site where Defendant(s) sell the BDF Lift Chairs directly to consumers.

181.    Such warnings should have otherwise been placed in a way calculated to give reasonable and fair warning to consumers.

182.    Had such warnings been provided, Plaintiffs and consumers would have not purchased the BDF Lift Chairs, or at the very least, avoided the risk caused by the dangerous products.

183.    As a direct and proximate result of Defendant's failure to warn of the risk of physical injury and injury to property that can be caused by the BDF Lift Chairs, Plaintiffs and the POTENTIAL Class members suffered or will suffer property damage, personal injuries up to and including death, and economic loss as defined by applicable statutory and common law; this in an amount to be determined at trial.

184.    Plaintiff(s) and the POTENTIAL Class are entitled to judgment in their favor awarding damages, costs of litigation, expert witness fees, attorney fees and any other or further relief the Court deems proper.

## COUNT EIGHT
### BREACH OF IMPLIED COVENANT
### OF GOOD FAITH & FAIR   DEALING

185.     Paragraphs 1 – 184 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

186.     Defendants  did not deal in good faith or fairly with the Plaintiff as they had an obligation to do with respect to the representations made as to quality, fitness for intended use, value, and safety in their advertisements, sales documents, sales receipts, printed materials, so-called "sales pitches" (whether spoken or written) and in all other aspects of the contract for sale between Defendant(s) and Plaintiff(s), but rather mis-represented the quality, reliability, manufacturing quality, features and safety of the BDF Lift Chairs.

187.     As a direct and proximate result of such misrepresentations of fact by defendants upon which Plaintiff(s) reasonably relied, plaintiff(s) have suffered substantial monetary losses, personal injuries and related damages, future damages, future expenses and future medical bills, costs, related expenses and will incur significant litigation expenses, including expert witness fees and legal counsel fees, all for which they seek judgment against the Defendant(s) and each of them, as the law and this Court may allow.

## COUNT NINE
### MISREPRESENTATION

188.     Paragraphs 1 – 187 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

189.     The misrepresentations were made by the defendants  at the time that defendants

discussed the contracts with the plaintiff  and then prepared, executed and delivered the contracts and payment agreements as described herein, and on the dates and times that such agreements were   presented, memorialized and proffered, confirmed and electronically distributed, communicated and signed or electronically signed by defendant(s) or their  representatives, agents, employees, managers or directors.

190.    Specific material misrepresentation were made by defendants  as to the BDF Lift Chair features, build quality, its over-all good to excellent quality, fitness for particular intended purposes and for safe use by end-use consumers such as the Plaintiffs here.

191.    Besides holding out or representing the sale of the dangerously defective BDF Lift Chair to be a product fit for its intended use by consumers and end-users; the defendants made no mention of the fact that the Lift Chair had wiring or a battery which could short-out, spark and ignite or cause a fire in the Lift Chair.

192.  Had the Defendants properly represented the features of the product and that it had such wiring or battery defects, plaintiff Lori Roberts could have decided to not purchase such an inherently dangerous and defective Lift Chair.

193.    As a direct and proximate result of such misrepresentations or failures to disclose such defects or dangerous components of the Lift Chair, Plaintiff(s) were damaged and seek judgment and full recovery for their damages, injuries, losses, fees, costs, expert witness fees and lawyer's fees.

## COUNT TEN
### RES IPSA LOQUITUR

194.    Paragraphs 1 – 193 above are incorporated by reference, re-stated and re-alleged the same as if fully set forth here.

195.    The dangerously defective BDF Lift Chair which caught fire and caused the destruction of the Rodenhizer / Hood family home and caused personal injuries to the now deceased elderly Mr. Neil H. Rodenhizer and his step-son Plaintiff David M. Hood and to Plaintiffs Lori A. Robert and Mark A. Rodenhizer, was in the sole and exclusive control and management of the Defendants prior to its delivery to the Plaintiff(s).

196.    The BDF Lift Chair was not altered or misused after leaving the manufacturer.

197.    The BDF Lift Chair was defective and the fire resulted from the Defendant's negligent conduct all as stated above throughout this Complaint.

198.    Such a highly dangerous and destructive fire originating in the BDF Lift Chair would not ordinarily happen unless the Lift Chair was defective.

199.    As a result of defendants' negligence, and of their other wrongful acts and practices or their failures to act as otherwise fully described and alleged above, combined with the effects of their unreasonably dangerous and defective product, the BDF Lift Chair; the plaintiffs have been damaged and have suffered monetary losses, emotional distress, physical injuries, pain and suffering and past, present and future medical expenses, all  as alleged above and to be proven at a trial on the merits of this civil action, for which they seek awards of damages, and where applicable or allowable compensatory and punitive damages along with their reasonable attorney's fees and costs of this action.

**V.   JURY TRIAL DEMAND**

200.    Plaintiffs David M. Hood, Lori A. Robert and Mark A. Rodenhizer hereby respectfully request a JURY TRIAL of all facts and issues triable by a Jury.

## VI.  PRAYER FOR  RELIEF

**WHEREFORE, Plaintiffs pray that the Court may grant the following relief:**

201.    Certifying the POTENTIAL Class as will likely be requested, appointing Plaintiffs as the class representatives for the Class and their undersigned counsel as class counsel;

202.    Requiring Defendant(s) to disgorge or return all monies, revenues and profits obtained by means of any wrongful act or practice to Plaintiffs and the members of the POTENTIAL Class under each cause of action where such relief is permitted;

203.    Enjoining Defendant(s) from continuing the unlawful practices as set forth above, including marketing or selling BDF Lift Chairs without disclosing the defects and potential health risks relating to them, and directing Defendant(s) to engage in corrective action, or providing other injunctive or equitable relief;

204.    Awarding exemplary or punitive damages pursuant to Massachusetts law, Federal Law or statutory provisions, and other applicable statutes;

205.    Awarding of personal injury and property loss damages to the Plaintiffs;

206.    Awarding damages for breach of express and implied warranties;

207.    Grant Plaintiffs judgment, and award compensatory damages, punitive damages as may be available, and reasonable attorney's fees and costs under the Massachusetts Implied Warranty Act and pursuant to 15 U.S.C.A. 2310;

208.    Grant Plaintiffs judgment and damages against the defendants for negligent infliction of emotional distress, with reasonable costs and attorney's fees; or alternatively,

209.    Grant Plaintiffs judgment and damages for intentional infliction of emotional distress, with reasonable costs and attorney's fees;

210.    Grant Plaintiff(s) judgment under the proposed expansions, extensions or reasonable recovery under Strict Liability theories;

211.    Grant Plaintiff(s) judgment on  their claims of Res Ipsa Loquitur against Defendant(s).

212.    Awarding of all equitable remedies available pursuant to applicable law; Awarding attorney fees and costs; Awarding prejudgment and postjudgment interest at the legal rate; and Providing such further relief as may be just and proper.

Respectfully submitted for the Plaintiffs, David M. Hood, Lori A. Robert and Mark A. Rodenhizer by their legal counsel,

  _/s/ Thomas Abdow_ _____    Dated: SUNDAY, AUGUST 14, 2022

Thomas Abdow, Esq. - Abdow Law
Mass BBO No. 553738
Post Office Box 485
Rockwood, Tennessee 37854
Tel. (615) 719-7076
Thomas.Abdow.JD@protonmail.com

CERTIFICATE OF SERVICE and COMPLIANCE

     I hereby certify that the foregoing COMPLAINT is filed in compliance with applicable civil procedural and local rules of Court, that a true copy of the above document was filed / and or served upon (each party, if any, appearing pro se and)  the attorney of record for each other party via the Court's ECF electronic filing and notification system  on SUNDAY, AUGUST 14, 2022.

  */s/ Thomas Abdow*